UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10191-WGY

UNITED STATES OF AMERICA

v.

RODAS ALVARADO

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

July 8, 2004

COHEN, M.

The above-named defendant was arrested on the basis of an indictment charging him with illegal reentry into the United States and harboring illegal aliens. On the occasion of his first appearance, the government moved for pretrial detention on the grounds of risk of flight. After appointment of counsel, the detention hearing started on Tuesday, July 6, 2004, and concluded on Wednesday, July 7, 2004.

I. A. Under the provisions of 18 U.S.C. 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. 3142(b) or (c), or detained pending trial under the provisions of 18 U.S.C. 3142(e). See 18 U.S.C. 3142(a).

Under §3142(e), a defendant may be ordered detained pending trial if the

judicial officer finds by <u>clear and convincing</u> evidence, after a detention hearing under the provisions of §3142(f), "...that no condition or combination of conditions (set forth under §3142(b) or (c)) will reasonably assure the safety of any other person or the community....", or if the judicial officer finds by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of §3142(f), "...that no condition or combination of conditions (set forth under §3142(b) or (c)) will reasonably assure the appearance of the person as required ...".[1]

    B.  The government is entitled to move for detention on grounds of danger to the community in a case that--

    (1) involves a crime of violence within the meaning of §3156(a)(4);

    (2) involves an offense punishable by death or life imprisonment;

    (3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[2] or more; <u>or</u>

    (4) involves <u>any</u> felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for

---

[1] The distinction between the former and latter are made clear by the very language of Section 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u>...". (Last emphasis added).  By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applies.  And that is precisely the holding in this and other Circuits.  See e.g., United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir.), cert. dismissed, 107 S.Ct. 562 (1986); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985); United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986).

[2] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, __ F.2d __, No. 89-1859, Sl.Op. 8-12 (1st Cir. October 5, 1989).

which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning--

    (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (b) the weight of the evidence against the accused;

    (c) the history and characteristics of the person, including--

    (i) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (ii) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release....

D.  Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of

conditions will reasonably assure the <u>safety</u> of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a Federal crime of violence within the meaning of §3156(a)(4) [or a state crime of violence within the meaning of §3156(a)(4) if the offense would have been a <u>federal</u> offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act--e.g., possession of cocaine, heroin, more than 1000 pounds of marihuana, with intent to distribute--, or the Controlled Substances Import and Export Act, <u>or</u> any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.

<u>Second</u>, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under the provisions of

18 U.S.C. 924(c)--i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.

Insofar as the latter "presumption" is applicable in assessing "risk of flight", the burden remains with the government to establish "...that no condition or combination of conditions will reasonably assure the appearance of the person as required....". In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence", United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991), indicating that these general findings are not applicable to him for whatever reason advanced. At this point, this court must weigh all relevant factors [set forth under §3142(g)], and then determine whether any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required....".  The decision is an individualized one based on all relevant factors. See United States v. Jessup, 757 F.2d 378 (1st Cir. 1985).[3]

---

[3] The presumption is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under Section 3142(d).  On later occasion, the United States Court of Appeals has observed, inter alia:

> Section 3142(e), however, only imposes a burden of production on a defendant.  The burden of persuasion remains with the government.  Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987)(per curiam); see also, United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however--

> the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. (Emphasis added).

United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(Emphasis added). See also, United States v. Rodriquez, 950 F.2d 85, 88 (2d Cir. 1991).

Additionally, with respect to those presumptions which are triggered by a finding of probable cause that the accused committed the offense with which he is charged, the return of an indictment "fair upon its face" conclusively establishes the existence of probable cause, and triggers the applicability of the particular presumption.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Vargas, 804 F.2d 157, 161 (1st Cir. 1986); United States v. Dominiguez, 783 F.2d 702 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-1479 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51, 52, 54-55 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. To the contrary, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate, on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983)--

> The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community." (Emphasis added; footnotes omitted).

See also, United States v. Hawkins, 617 F.2d 59 (5th Cir.), certiorari denied, 449 U.S.

962 (1980)(trafficking in controlled substances).[4]

Finally, the presumptions are applicable if the judicial officer finds probable cause to believe that the accused has committed one of the predicate offenses referred to above, even if the charge before the court does not involve that particular offense. See United States v. Bess, 678 F.Supp. 929, 934 (D.D.C. 1988); but see, United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).[5]

II.  The defendant is 35 years old, having been born in the Honduras in 1968. He is currently a citizen of the Honduras. His parents are deceased. He has one brother who is currently in INS custody. He has a wife and four children in he Honduras, but he reports that they are separated. He reports that he has lived in Massachusetts for the past five years.[6] For the past fifteen months, the defendant has

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. 3142(f)(1)(A) through 3142(f)(1)(D). That is to say, even if a detention hearing is appropriate under Sections 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under Section 3142(f)(1), and the judicial officer has determined that a hearing is appropriate under that latter section. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

Because of the nature of the charges in this case, none of the statutory presumptions are applicable to this case.

[5] In this court's view, Judge Robinson's decision in Bess, supra, is the more persuasive one, the holding in Chimurenga, supra, notwithstanding. The Bail Reform Act of 1984 was modeled, in large part, on the preventative detention statutes in effect for a number of years in the District of Columbia. This court does not view the requirement that the offense giving rise to the statutory presumption be contained within the formal charge as consistent with the procedural framework imposed by the statute. The Chimurenga court seems to suggest that the requirement is necessary to provide fair notice to the defendant that the statutory presumption will come into play. But a formal charge, as such, is only one method by which to give that fair notice. For example, in a complaint charging armed bank robbery in violation of the provisions of 18 U.S.C. 2113(d), the operative facts set forth in the affidavit in support of the charging complaint may well state that the defendant was using a firearm during the commission of the robbery. That is clearly fair notice.

[6] For the past six months, he has lived with his girlfriend, Helen Rodriguez, in Apartment 314, 109 Tremont Street, in Brighton. For the two years prior to that, he resided in a different apartment at the same address, but not with Ms. Rodriguez. The defendant did not indicate where he lived for the three years prior to that since his entry into the United States.

worked for a cleaning and maintenance company using an alias, but that employment was illegal since he was not permitted to work in the United States. He reports no significant assets or liabilities in the United States, but does report that he owns land having a value of some $11,000 in the Honduras.

In or about 1997, he was deported pursuant to a warrant of deportation.[7] After his reentry into the United States, he was charged in the Chelsea District Court with assault and battery on a police officer, resisting arrest, and disorderly conduct, but those charges were dismissed in May of 2003.

III.   The defendant is charged with illegal reentry into the United States, as well as, in three counts, harboring illegal aliens. Based on the record evidence, including the warrant of deportation, this court finds and concludes that the evidence is clearly overwhelming *vis a vis* the illegal reentry charge.[8] And because of this clear evidence of an illegal reentry, INS (now ICE) has reinstated his order of deportation which will become effective without further ado upon his conviction and service of his sentence, if

---

[7] He was not deported on the basis of having committed an aggravated felony, but rather for illegal entry into the United States.

[8] There is no question but what that the defendant was "found" in the United States after his deportation, and that he had not obtained permission to reenter. Counsel for the defendant says, however, that there is a possibility that the prior deportation was illegal. Of course, anything is possible. But absent some exciting suspicion of irregularity in the earlier deportation proceedings, and there is none at this time, we can safely assume that the earlier deportation proceedings were conducted in a regular, fair, and legal manner.

The government chose not to present evidence *vis a vis* the harboring counts at the detention hearing. We do know, however, that the grand jury had probable cause to believe that the defendant harbored three different aliens as alleged in Counts 1 through 3 of the indictment. And we also know by way of an proffer made by counsel for the defendant that three illegal aliens were found in defendant's residence on the date of his arrest, June 8, 2004.

any.[9]

IV.  In the circumstances, this court finds and concludes that the government has established by a preponderance of the evidence that no condition of release, short of pretrial detention, including release on an electronic bracelet,[10] would reasonably assure the presence of the defendant.  It is true, of course, that the defendant, upon conviction on the illegal reentry charges, faces a minimum Guideline sentence of imprisonment (0 to 6 months).  But that is not the only consequence which he faces (wholly apart from the penalties which may be imposed upon conviction on the harboring charges, see note 10, *supra*), regardless of whether he is convicted or not.  And that is because the defendant will be deported, once again, and without any possibility of relief from that deportation, to the Honduras upon completion of these criminal proceedings (including any sentence which might be imposed) - regardless of

---

[9]   If the defendant was ordered released on conditions by this court, he would be taken into custody by INS based on the outstanding warrant of deportation.  Counsel for defendant, drawing upon what she perceives to be similar precedent (although it Is not) says that there is a possibility that if the defendant was retaken into custody by INS, INS, in turn, might release the defendant on bail pending completion of the criminal proceedings and deportation.  And from this, counsel says, the defendant is a good candidate for release by this court.

This court hardly accepts the predicate - *i.e.*, that the defendant, if retaken by INS, would be released by INS pdnding completion of the criminal proceeidngs - urged by the defendant.  But even if there was more than sheer fancy in that notion, it adds nothing.  INS has its mission, and the judicial system, on the other hand, has its different mission.  Those missions are not complementary to each other.  The mission of INS, with its current budgetary restraints, is to remove illegal aliens promptly without added expenses associated with confinement.  Exhibit A to that mindset is the fact that, within just the past two or three weeks, INS deported an illegal alien even after return of an indictment, but before the defendant's initial appearance before this court.  Notwithstanding that which INS might or might not do in terms of release pending the completion of criminal proceedings, this court does not taken guidance from INS.  For it is the judgment call of this court, and this court alone, which controls release under the provisions of the Bail Reform Act of 1984.  And that judgment, in the circumstances of this case, assuredly favors detention, not release, pending trial in order to assure the defendant's presence.

[10]   The use of an electronic bracelet is not, contrary to popular misconception, not a fail safe.  Indeed, the last two illegal aliens this court released on an electronic bracelet were next found in Canada, and had to be returned to face justice only after extradition proceedings.

the outcome of the charges of harboring illegal aliens.[11] In this case, the defendant has eluded the authorities for some five years, and has used false identification towards that end (and towards the end of engaging in illegal employment). He still has significant roots in the Honduras, including his four children, and his only significant asset, land valued in the amount of $11,000, is also located in the Honduras. Given all of this, and the obvious consequences which the defendant faces upon conviction (including certain deportation once again), the government has established by a preponderance of the evidence that no condition or combination of conditions, short of pretrial detention, would reasonably assure the defendant's presence at trial.

V. IT IS ACCORDINGLY ORDERED that the defendant be DETAINED pending trial, and it is further Ordered--

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is

---

[11] The Antiterrorism and Effective Death Penalty Act of 1996 has upped the ante in connection with convictions for aggravated offenses. Under the provisions of 8 U.S.C. Section 1252, an alien convicted of an "aggravated felony" [and the current charge of illegal reentry is an"aggravated felony". Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 amended Section 212(c) and provides that the Attorney General shall not grant a waiver of deportation in such circumstances. And Section 440(c) of the Antiterrorism and Effective Death Penalty Act of 1996 amended Section 106(a)(10) [8 U.S.C. 1105a(a)(10)] of the Act, precluding judicial review of those orders of deportation. See Reyes-Hernandez v. Immigration and Naturalization Service, 89 F.3d 490 (7th Cir. 1996).

detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

_____
UNITED STATES MAGISTRATE JUDGE